ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| DANIEL A. GONZÁLEZ BADILLO<br><br>Apelado<br><br>v.<br><br>LEILA Y. FLORES<br><br>Apelante | KLAN202401153 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br>Caso Núm.:<br>G DI2017-0358<br><br>Sobre: Divorcio-Consentimiento Mutuo |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de mayo de 2025.

Comparece ante nos la señora Leila Y. Flores (señora Flores o apelante) mediante recurso de *apelación*. Nos solicita la revocación de una *Resolución*, emitida el 2 de octubre de 2024 y notificada el 9 de octubre de 2024, por el Tribunal de Primera Instancia, Sala Superior de Guayama (TPI).[1] En el referido dictamen, el TPI le concedió al señor Daniel A. González Badillo (señor González Badillo o apelado) la custodia compartida de la menor habida entre las partes de epígrafe.

Por los fundamentos que expondremos a continuación, confirmamos el dictamen impugnado.

**I.**

Según surge del expediente, el señor González Badillo y la señora Flores son los progenitores de la menor A.D.G.F. El 18 de diciembre de 2017, el TPI divorció mediante *Sentencia* a las partes de epígrafe por la causal de consentimiento mutuo. Por medio del mencionado dictamen, las partes acordaron que la apelante ejercería la custodia de A.D.G.F., mientras que el apelado tendría relaciones filiales en fines de semanas alternos.

---

[1] Apéndice de la Apelante, págs. 210-213.

Número Identificador

SEN2025_____

El 2 de octubre de 2020, el señor González Badillo presentó una *Demanda* sobre custodia.[2] Alegó que en marzo de 2020, la señora Flores le entregó la custodia física de A.D.G.F. y que desde entonces, es el apelado quien ejerce la custodia de la menor. Arguyó que hasta la radicación de la demanda, el apelado se hizo cargo de todas las necesidades básicas, médicas y alimentarias de la menor. Señaló, además, que la señora Flores se relacionaba con la menor en los fines de semanas. Por todo esto, le solicitó al TPI la custodia de A.D.G.F.

El 22 de abril de 2021, el TPI refirió el caso a la Unidad de Relaciones de Familia.[3] Así las cosas, el 20 de abril de 2022, la Unidad de Relaciones de Familia emitió su *Informe Social Forense* preparado por la Trabajadora Social María del C. Pardo Ramos (TS Pardo Ramos).[4] En este, se recomendó que la custodia de A.D.G.F. permaneciera con la señora Flores. En cuanto a las relaciones filiales, se recomendó que el señor González Badillo continuara relacionándose con A.D.G.F. en fines de semanas alternos de viernes a domingo o lunes de ser feriado. De igual forma, se recomendó que el apelado compartiera con A.D.G.F. mediante llamadas telefónicas.

Inconforme con las determinaciones de la Unidad de Relaciones de Familia, el señor González Badillo presentó una *Moción en Cumplimiento de Orden* el 2 de mayo de 2022.[5] Mediante esta, el apelado informó su deseo de impugnar el informe social del 20 de abril de 2022. Señaló que su impugnación se basaba en los hallazgos recopilados, la metodología utilizada, la parcialización de la investigación y las recomendaciones basadas en información irreal. De igual forma, en la misma fecha presentó una *Moción en Torno a Perito*.[6] En esta, anunció que utilizaría a la Trabajadora Social Eunice

---

[2] Apéndice de la Apelante, págs. 3-5.
[3] Apéndice del Apelado, págs. 3-4.
[4] Apéndice de la Apelante, págs. 52-78.
[5] Apéndice de la Apelante, págs. 117-119.
[6] Apéndice de la Apelante, pág. 116.

A. Vázquez Santos (TS Vázquez Santos) como perito para impugnar el informe.

El 3 de octubre de 2022, el señor González Badillo presentó una Moción para notificar el informe de revisión y solicitar una vista en su fondo.[7] Junto a la moción, presentó la *Revisión de Informe Social.*[8] Así las cosas, el TPI celebró 11 vistas en su fondo sobre impugnación de informe. Las mismas se celebraron los días 2 de febrero de 2023; 2, 3 y 4 de mayo de 2023; 17 de agosto de 2023; 7, 21 y 28 de septiembre de 2023; 12 de octubre de 2023; 1 y 8 de abril de 2024.

El 2 de octubre de 2024, el TPI emitió una *Resolución.*[9] Conforme a la prueba sometida por las partes, el foro de instancia realizó las siguientes determinaciones de hechos:

1. Las partes son los padres biológicos de la menor **A.D.G.F.**, nacida el 20 de abril de 2017 producto del matrimonio de estos.

2. La menor **A.D.G.F.** se encuentra viviendo con su madre la **Sra. Flores** en el pueblo de Patillas.

3. Las relaciones filiales se dan en fines de semanas alternos con el **Sr. González Badillo**.

4. El **Sr. Gonzáles Badillo** reside en el pueblo de Gurabo.

5. La menor **A.D.G.F.** asiste a la escuela Gifted School Alliance en el pueblo de Guayama donde también trabaja la madre.

6. El **Sr. Daniel González Badillo** expresó que su interés es obtener la custodia compartida de la menor **A.D.G.F.** para poder pasar mayor tiempo con ella.

7. La **Sra. Flores** se opone a la solicitud de custodia compartida.

8. En el informe social forense de la Trabajadora Social **María del C. Pardo** se recomienda la custodia monoparental a la madre de la menor.

9. En el informe social forense de la Trabajadora Social **Eunice A. Vázquez** se estableció que el informe social de la Trabajadora Social **Pardo**, no se presentó el cuadro más completo posible considerando la custodia compartida. Del mismo se desprende 3 errores fatales:
   a. **Falta de uso de literatura.**
   b. **Fallas en la corroboración, al utilizar la ubicación de la menor como la razón de mayor peso para**

---

[7] Apéndice de la Apelante, pág. 120.
[8] Apéndice de la Apelante, págs. 122-147.
[9] Apéndice de la Apelante, págs. 210-213.

> otorgar la custodia a la madre sin operacionalizara.
>
> c. **No trabajar de manera adecuada el avalúo de gatekeeping (cuan flexible o no puede ser un progenitor sobre el otro).**

10. La menor **A.D.G.F.** goza de buena relación y vínculos afectivos tanto con su madre como con su padre, ambos progenitores se preocupan por el mejor bienestar de la menor y están capacitados para ejercer la custodia.

11. Ambos progenitores tienen un deseo de estar activos en la crianza de la menor **A.D.G.F.**

El TPI concluyó que la custodia de **A.D.G.F.** sería compartida por ambos progenitores. El foro primario determinó que tanto la señora Flores como el señor González Badillo se encontraban en condiciones y con la capacidad de ostentar la custodia de la menor. Por ello, el TPI estableció un plan de etapas para aumentar paulatinamente el tiempo de compartir entre el apelado y **A.D.G.F.** El foro de instancia determinó que dicho plan sería revisado para extender el tiempo que **A.D.G.F.** pernocta con el señor González Badillo. Así, durante la primera etapa, el señor González Badillo tendría la custodia física de **A.D.G.F.** de jueves a lunes en semanas alternas. De manera que, el apelado buscaría a **A.D.G.F.** los jueves en la escuela y la entregaría lunes en la mañana en la escuela.

Inconforme con la determinación del foro primario, la señora Flores presentó una *Solicitud de Reconsideración y de Determinaciones Adicionales.*[10] El señor González Badillo presentó su oposición a la solicitud de la apelante.[11] Finalmente, el TPI declaró No Ha Lugar la solicitud de reconsideración de la señora Flores.[12]

Insatisfecha aun, la apelante acude ante nos mediante el presente recurso de *Apelación* y nos señala la comisión de los siguientes errores:

> **PRIMER SEÑALAMIENTO DE ERROR: ERRÓ EL TPI AL CONCEDER CUSTODIA COMPARTIDA EN ESTE CASO CUANDO DICHA DETERMINACIÓN NO SE BASÓ EN LAS DETERMINACIONES DE HECHOS NI EN LAS CONCLUSIONES DE DERECHO DE LA RESOLUCIÓN.**

---

[10] Apéndice de la Apelante, págs. 220-227.
[11] Apéndice de la Apelante, págs. 238-247.
[12] Apéndice de la Apelante, págs. 248-249.

**SEGUNDO SEÑALAMIENTO DE ERROR: ERRÓ EL TPI AL FALLAR EN ATENDER EL INCIDENTE DE DESACATO DEL RECURRIDO CON SU OBLIGACIÓN DE PAGO DE PENSIÓN ALIMNETARIA.**

El señor González Badillo compareció mediante escrito en oposición. Contando con la comparecencia de ambas partes, procedemos a resolver.

**II.**

### A. Patria potestad y custodia

El Artículo 589 del Código Civil, 31 LPRA sec. 7241, define la *patria potestad* como "el conjunto de deberes y derechos que corresponden a los progenitores sobre la persona y los bienes de los hijos, desde que estos nacen hasta que alcanzan la mayoría de edad u obtienen su emancipación". En cuanto a la *custodia,* el ordenamiento legal lo describe como "un componente de la patria potestad, porque impone a los padres el deber primario de tener a sus hijos no emancipados bajo su compañía". *Jusino González v. Norat Santiago*, 211 DPR 855, 863 (2023); *Torres, Ex parte,* 118 DPR 469, 476 (1987). Es decir, la custodia se refiere a la tenencia o el control físico que tiene un progenitor sobre los hijos. *Id.*

El Tribunal Supremo de Puerto Rico ha afirmado que, de conformidad con las prerrogativas que derivan del poder de *parens patriae* del Estado, el tribunal ostenta amplias facultades para ejecutar las medidas que estime necesarias, al determinar la custodia de un menor. *Jusino González v. Norat Santiago, supra*, pág. 865. Por igual, los tribunales deben guiarse principalmente por el bienestar y los mejores intereses del menor ya que éstos constituyen la piedra angular de la política pública. *Peña v. Peña*, 164 DPR 949, 832-833 (2005); *Marrero Reyes v. García Ramírez,* 105 DPR 90, 104 (1976). Por tanto, ante una determinación sobre custodia, los tribunales están llamados a realizar un análisis objetivo, sereno y cuidadoso de todas las circunstancias presentes en el caso ante su consideración. *Jusino*

*González v. Norat Santiago, supra,* pág. 864; *Muñoz Sánchez v. Báez de Jesús,* 195 DPR 645, 651 (2016); *Ortiz v. Meléndez,* 164 DPR 16, 26-27 (2005). A su vez, los foros judiciales están asistidos por la Unidad Social de Relaciones de Familia y Asuntos de Menores, que tiene como función principal ofrecer asesoramiento social mediante evaluaciones periciales que permitan al tribunal tomar decisiones informadas en los casos ante su consideración. *Jusino González v. Norat Santiago, supra,* pág. 865; *Muñoz Sánchez v. Báez de Jesús, supra,* pág. 652. Estos funcionarios se rigen por un manual denominado como *Normas y Procedimientos de las Unidades Sociales de Relaciones de Familia y Asuntos de Menores.* Ello así, porque al dilucidar los cambios de custodia de un menor, el foro judicial debe contar con la información más completa y variada que sea posible, de modo que pueda resolver acorde a su mejor bienestar. *Jusino González v. Norat Santiago, supra,* págs. 865-866.

La Ley Núm. 223 de 21 de noviembre de 2011, *Ley Protectora de los Derechos de los Menores en el Proceso de Adjudicación de Custodia,* 32 LPRA sec. 3181 *et seq.,* dispone en su Artículo 2 *Declaración de la Política Pública* que, en un gran número de casos de disolución de una relación de pareja, en los que se han procreado hijos, tanto el padre como la madre se encuentran aptos y disponibles para desempeñar responsablemente sus deberes y obligaciones para con sus hijos. Por ello, "**el Estado debe promover que ambos progenitores compartan la custodia de sus hijos, a través de una integración responsable en el proceso de educación, crianza, disciplina y cuidado**. De esta manera, se evita que nuestros niños y niñas, por razón de la disolución de la relación de sus padres, se desarrollen en circunstancias menos ventajosas y beneficiosas". (Énfasis nuestro). *Id.*

Esta visión fue acogida en nuestro Código Civil, por virtud del Artículo 603, *Prioridad a la determinación de custodia compartida,* 31

LPRA sec. 7282, que propende a que los progenitores voluntariamente acuerden pactos de custodia compartida y el tribunal preste su anuencia, siempre que ello se ajuste al interés óptimo del menor. El ordenamiento civil describe la *custodia compartida* como "la obligación de ambos progenitores de ejercer directa y totalmente todos los deberes y funciones que conlleva la patria potestad de los hijos, relacionándose con estos el mayor tiempo posible y brindándoles la compañía y atención que se espera del progenitor responsable". Art. 602 del Cód. Civil, 31 LPRA sec. 7281; véase, además, Art. 3 de la Ley Núm. 223-2011, 32 LPRA sec. 3181.

Con este propósito, el Artículo 604 del Código Civil, 31 LPRA sec. 7283, establece los siguientes criterios a considerar en la adjudicación de custodia:

(1) La salud mental de ambos progenitores y de los hijos;

(2) el nivel de responsabilidad o integridad moral exhibido por cada uno de los progenitores;

(3) si ha habido un historial de violencia doméstica entre los integrantes del núcleo familiar;

(4) la capacidad de cada progenitor para satisfacer las necesidades afectivas, económicas y morales del menor, tanto presentes como futuras;

(5) el historial de cada progenitor en la relación con sus hijos;

(6) las necesidades específicas de cada uno de los hijos menores cuya custodia se solicita;

(7) la relación del hijo con sus progenitores, sus hermanos y otros miembros de la familia;

(8) la capacidad, disponibilidad y compromiso de los progenitores de asumir la responsabilidad de criar los hijos conjuntamente;

(9) la razón o los motivos de los progenitores para solicitar la custodia compartida;

(10) si la profesión u oficio que ejercen los progenitores no es un impedimento para ejercer una custodia compartida;

(11) si la ubicación y distancia entre las residencias de los progenitores perjudica la educación del hijo;

(12) la comunicación que existe entre los progenitores y la capacidad para comunicarse mediante comunicación directa o utilizando mecanismos alternos; y

(13) cualquier otro criterio que pueda considerarse para garantizar el interés óptimo de los hijos.

A estos efectos, el Artículo 7 de la Ley Núm. 223-2011, *supra*, el cual establece criterios muy similares a los estatuidos en el precitado Artículo 604 de nuestro Código,[13] mandata que, al considerarse una solicitud de custodia, el tribunal referirá el caso al trabajador social de relaciones de familia, quien realizará una evaluación y rendirá un informe con recomendaciones. 32 LPRA sec. 3185. Ahora, **el análisis debe considerar la custodia compartida como primera opción, siempre que ello represente el mejor bienestar del menor**. Art. 8 de la Ley Núm. 223-2011, 32 LPRA sec. 3186. Es decir, la recomendación sobre custodia que emita el trabajador social será uno de los factores a tomar en cuenta por el tribunal para hacer su determinación, pero no será el único, ya que el foro judicial emitirá su determinación de custodia tomando en consideración lo dispuesto en el estatuto especial, protegiendo siempre los mejores intereses y el bienestar del menor, a la luz de todas las circunstancias existentes. *Id.* Claro está, esta decisión no

---

[13] El Artículo 7 de la Ley Núm. 223-2011, *supra*, establece los siguientes criterios:

(1) La salud mental de ambos progenitores, así como la del hijo(a) o hijos(as) cuya custodia se va a adjudicar.

(2) El nivel de responsabilidad o integridad moral exhibido por cada uno de los progenitores y si ha habido un historial de violencia doméstica entre los integrantes del núcleo familiar.

(3) La capacidad de cada progenitor para satisfacer las necesidades afectivas, económicas y morales del menor, tanto presentes como futuras.

(4) El historial de cada progenitor en la relación con sus hijos, tanto antes del divorcio, separación o disolución de la relación consensual, como después del mismo.

(5) Las necesidades específicas de cada uno de los menores cuya custodia está en controversia.

(6) La interrelación de cada menor, con sus progenitores, sus hermanos y demás miembros de la familia.

(7) Que la decisión no sea producto de la irreflexión o coacción.

(8) Si los progenitores poseen la capacidad, disponibilidad y firme propósito de asumir la responsabilidad de criar los hijos conjuntamente.

(9) Los verdaderos motivos y objetivos por los cuales los progenitores han solicitado la patria potestad y custodia compartida.

(10) Si la profesión, ocupación u oficio que realizan los progenitores impedirá que funcione el acuerdo efectivamente.

(11) Si la ubicación y distancia de ambos hogares perjudica la educación del menor.

(12) La comunicación que existe entre los progenitores y la capacidad para comunicarse mediante comunicación directa o utilizando mecanismos alternos.

(13) Analizará la presencia de la enajenación parental, o cualesquiera otras razones que pudieran ocasionar la resistencia del menor para relacionarse con sus padres. [...]

(14) Cualquier otro criterio válido o pertinente que pueda considerarse para garantizar el mejor bienestar del menor.

constituye cosa juzgada. Art. 10 de la Ley Núm. 223-2011, 32 LPRA sec. 3188.

En lo pertinente, el Artículo 9 de la Ley Núm. 223-2011, 32 LPRA sec. 3187, contempla también las circunstancias en que la custodia compartida no es recomendable:[14]

> La Custodia Compartida no será considerada como Beneficiosa y Favorable para los Mejores Intereses de los Menores de Edad en los siguientes casos:
>
> 1) Cuando uno de los progenitores manifiesta que no le interesa tener la custodia de los menores, a base de un plan de custodia compartida. Se entenderá que la renuncia es a favor del otro progenitor.
>
> 2) Si uno de los progenitores sufre de una incapacidad o deficiencia mental, según determinada por un profesional de la salud, y la misma es de naturaleza irreversible y de tal magnitud que le impide atender adecuadamente a los hijos/as y garantizar la seguridad e integridad física, mental, emocional y/o sexual de éstos.
>
> 3) Cuando los actos u omisiones de uno de los progenitores resulten perjudicial a los hijos o constituya un patrón de ejemplos corruptores.
>
> 4) Cuando uno de los progenitores o su cónyuge o compañero o compañera consensual haya sido convicto por actos constitutivos de maltrato de menores.
>
> 5) Cuando uno de los progenitores se encuentre confinado en una institución carcelaria.
>
> 6) Cuando uno de los progenitores ha sido convicto por actos constitutivos de violencia doméstica, según lo dispuesto en la Ley Núm. 54 de 15 de agosto de 1989, según enmendada.
>
> 7) Situaciones donde el padre o la madre haya cometido abuso sexual, o cualquiera de los delitos sexuales, según tipificados en el Código Penal de Puerto Rico, hacia algún menor.
>
> 8) Cuando uno de los progenitores o su cónyuge o compañero o compañera consensual, si hubiera, sea adicto a drogas ilegales o alcohol.
> Si tras conceder la custodia compartida uno de los progenitores, temeraria, arbitraria e injustamente se negare a aceptar dicha decisión, y realizare actos para entorpecer la relación del otro progenitor con los menores, el tribunal podrá alterar el decreto y otorgarle la custodia al otro progenitor. Ante el planteamiento de actos constitutivos de enajenación parental el tribunal podrá ordenar una evaluación a la Unidad Social de Relaciones de Familia o al profesional licenciado que

---

[14] Refiérase, además, al Artículo 605 del Código Civil, 31 LPRA sec. 7284.

entienda necesarios, tales como psicólogos, psiquiatras, consejeros o trabajadores sociales, quienes prepararán informes y presentarán sus hallazgos y recomendaciones al tribunal. El tribunal podrá, de entenderlo necesario, evaluar a las partes o cualquier otra prueba que estime pertinente.[15]

Cuando se haya encontrado evidencia de que uno de los progenitores ha cometido enajenación parental, por la parte que, tiene custodia de los menores, el tribunal, evaluará la remoción de la custodia u otras medidas cautelares a discreción del juzgador. Si la enajenación parental es cometida por un pariente, madrastra, padrastro o pareja del progenitor, el tribunal tomará medidas de protección a los menores.

Cuando sea un progenitor que incurra en la conducta de enajenación parental, el tribunal evaluará ordenar terapia psicológica como medida de protección previo a decisión de remoción de custodia. En caso de ordenar terapias psicológicas, el tribunal evaluará el progreso de esta para hacer nuevas recomendaciones, de ser necesario y se ameriten.

Todo progenitor que causare daño emocional o psicológico a los menores por la conducta de enajenación parental, se le ordenará el pago por las terapias psicológicas que conlleven la reparación de dicho daño en los menores.

El tribunal tendrá la discreción para tomar las medidas y emitir las órdenes que entienda pertinentes en cualquier etapa del proceso.

**B. Deferencia a las determinaciones del Tribunal de Primera Instancia**

Es doctrina reiterada por nuestra jurisprudencia que las sentencias dictadas por los tribunales de instancia merecen deferencia, toda vez que el juzgador de los hechos en dicha etapa aquilata la prueba de primera mano y se encuentra en una mejor posición que los foros apelativos para evaluar la misma. *Gallardo v. Petiton*, 132 DPR 39, 56 (1992). Como la corrección de los tribunales inferiores se presume, los tribunales apelativos sólo debemos variar dichos dictámenes si en su determinación, el foro apelado incurrió en *error manifiesto, pasión, prejuicio* o *parcialidad. Hernández*

---

[15] Conforme el Artículo 7 de la Ley Núm. 223-2011, *supra*, "[l]a enajenación parental se refiere a la obstaculización por parte de uno de los progenitores de las relaciones filiales de sus hijos o hijas, menores de edad, con el otro progenitor, mediante el uso de diferentes estrategias, con el propósito de transformar o adoctrinar la conciencia de sus hijos o hijas, a los fines de denigrar, impedir, obstruir o destruir sus vínculos con el otro progenitor y el menor de edad presenta pensamientos o sentimientos de rechazo hacia el otro progenitor; demuestra actitudes negativas hacia este o si, en efecto, se ha afectado el vínculo afectivo entre el menor y el otro progenitor. [...]". 32 LPRA sec. 3185.

*Maldonado v. Taco Maker*, 181 DPR 281, 289 (2011). Reiteramos, el tribunal de instancia es quien está en mejor posición de aquilatar la prueba testifical.

Por ello, reconocemos la norma de abstención de alterar las determinaciones del tribunal de primera instancia en asuntos de derecho de familia concediéndole amplia discreción. *Ortiz v. Vega*, 107 DPR 831, 832 (1978). Sin embargo, esta norma de deferencia tiene una excepción y cede cuando la parte promovente demuestra que

> *[h]ubo un craso abuso de discreción o que el tribunal actuó con prejuicio y parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial.* Trans-Oceanic Life Ins. v. Oracle Corp., 184 DPR 689, 709 (2012).

El Tribunal Supremo de Puerto Rico reconoce la difícil tarea que es la evaluación de abuso de discreción por parte de los tribunales. *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414, 435 (2013). No obstante, el foro supremo reconoce que la estrecha e indudable relación entre el adecuado ejercicio de discreción y el concepto de razonabilidad. *Íd.* Nuestro más alto foro ha definido la *discreción* como "*una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera*". *Íd.* Cónsono con ello, el Tribunal Supremo enumeró situaciones que constituyen un abuso de discreción:

> *[c]uando el juez, en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando por el contrario el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos.* Ramírez v. Policía de PR, 158 DPR 320, 340-341 (2002).

Ahora bien, la norma de deferencia no es de aplicación a la evaluación de la prueba pericial y documental. Los foros revisores nos encontramos en igual posición que los tribunales sentenciadores, en

lo que respecta a las conclusiones de hechos basadas en prueba pericial o documental, para apreciarla y adoptar nuestro propio criterio. *González Hernández v. González Hernández,* 181 DPR 746, 777 (2011); *Arrieta v. De La Vega,* 165 DPR 538, 551 (2005). Inclusive, aunque sea técnicamente correcta, podemos descartarla. *Íd.*

### III.

La señora Flores acude ante nos y plantea la comisión de dos errores. En primer lugar, alega que el TPI incidió al conceder la custodia compartida ya que dicha determinación no se basó ni en las determinaciones de hechos ni en las conclusiones de derecho del foro apelado. En esencia, la apelante arguye que el TPI echó a un lado las recomendaciones formuladas en el Informe Social que preparó la TS Pardo Ramos y adoptó el informe preparado por la TS Vázquez Santos sin explicar su proceder. Señaló, además, que las determinaciones de hechos del foro primario no eran suficientes para refutar las conclusiones de la TS Pardo Ramos.

Según mencionamos, el Informe Social es el producto final que detalla todas las áreas evaluadas por los trabajadores sociales. Es un documento con un alto valor para el tribunal puesto que contiene los hallazgos y recomendaciones de expertos y peritos en las relaciones de familia. Si bien es cierto que el Informe Social Forense no es el único factor que los tribunales toman en consideración, esto no significa que los tribunales pueden obviar por completo el contenido de los informes.

Como bien señalamos, en el proceso decisional en torno a la custodia de un menor se requiere la evaluación de varios criterios sociales que inciden en el mejor interés de menor. Es harto conocido que las partes afectadas por un Informe Social tienen derecho a examinarlo y el tribunal de instancia **está en la obligación de proveer una oportunidad para que las partes afectadas puedan formular objeciones al mismo o presentar prueba en contra de las**

**conclusiones de dicho informe**. *Rentas Nieves v. Betancourt Figueroa*, supra.

En el caso ante nuestra consideración, el señor González Badillo objetó el informe de la TS Pardo Ramos y, en oposición, presentó el informe de la TS Vázquez Santos. Así las cosas, el TPI celebró 11 vistas en su fondo sobre impugnación de informe. Finalizadas las vistas, el foro primario emitió la determinación apelada. El TPI encontró que la recomendación de la TS Vázquez Santos sobre custodia compartida era apropiada y beneficial para A.D.G.F.

Según se desprende del Informe Social Forense preparado por la TS Pardo Ramos, esta recomendó la custodia monoparental de A.D.G.F. basándose en dos criterios. El primero, por la ubicación y distancia entre las residencias, escuela y centros de terapia. El segundo criterio por las dificultades de comunicación entre los padres. Por su parte, la TS Vázquez Santos discrepó de dichos criterios y enfatizó que la ubicación escolar no podía ser justificación suficiente para que A.D.G.F. no pudiera beneficiarse del mayor tiempo de crianza entre sus progenitores. Por ello, concluyó que en el caso de epígrafe existía la oportunidad de cumplir con la política pública de custodia compartida.

Recordemos que el TPI realizó, entre otras, las siguientes determinaciones de hechos:

6. El **Sr. Daniel González Badillo** expresó que su interés es obtener la custodia compartida de la menor **A.D.G.F.** para poder pasar mayor tiempo con ella.

7. La **Sra. Flores** se opone a la solicitud de custodia compartida.

8. En el informe social forense de la Trabajadora Social **María del C. Pardo** se recomienda la custodia monoparental a la madre de la menor.

9. En el informe social forense de la Trabajadora Social **Eunice A. Vázquez** se estableció que el informe social de la Trabajadora Social **Pardo**, no se presentó el cuadro más completo posible considerando la custodia compartida. Del

mismo se desprende tres errores fatales, que reproducimos a continuación:

**a. Falta de uso de literatura.**

**b. Fallas en la corroboración, al utilizar la ubicación de la menor como la razón de mayor peso para otorgar la custodia a la madre sin operacionalizara [*sic*].**

**c. No trabajar de manera adecuada el avalúo de gatekeeping (cuan flexible o no puede ser un progenitor sobre el otro).**

10. La menor **A.D.G.F.** goza de buena relación y vínculos afectivos tanto con su madre como con su padre, ambos progenitores se preocupan por el mejor bienestar de la menor y están capacitados para ejercer la custodia.

11. Ambos progenitores tienen un deseo de estar activos en la crianza de la menor **A.D.G.F.**

La señora Flores adujo que ninguna de estas determinaciones de hechos es suficientes para refutar las conclusiones de custodia monoparental contenidas en el informe preparado por la TS Pardo Ramos. Inclusive, señaló que el TPI solo indicó que la perita del señor González Badillo consideró que el informe de la TS Pardo Ramos era insuficiente. No le asiste la razón.

El TPI celebró 11 vistas en su fondo sobre impugnación de informe en las cuales se discutieron ambos informes. Ahora bien, este foro apelativo se encuentra en igual posición que el foro sentenciador, en lo que respecta a las conclusiones de hechos basadas en prueba pericial o documental, para apreciarla y adoptar nuestro propio criterio. No obstante, encontramos que no se cometió el error señalado. Es nuestra posición que el TPI tomó la determinación más favorable para A.D.G.F. Además, del expediente no surge que la determinación del foro primario sea producto de un error manifiesto, pasión, prejuicio o parcialidad.

Por otro lado, la apelante señaló que el TPI también erró al no atender el incumplimiento del señor González Badillo con su obligación de pago de pensión alimentaria. Surge del expediente que el 2 de octubre de 2024, el TPI emitió una *Orden para Mostrar Causa* en la cual le requirió al Sr. González Badillo efectuar el pago de

$1,532.00 por concepto de atrasos en la pensión alimentaria.[16] El foro primario le advirtió al apelado que de no cumplir con la orden, se podría ordenar su arresto y encarcelación sin más verle ni oírle. El 24 de octubre de 2024, el señor González Badillo presentó una *Moción en Cumplimiento de Orden* en la cual informó que le gestionó dos giros postales a la señora Flores, uno por la cantidad de $1,000.00 y el segundo por la cantidad de $32.00.[17] De igual modo, informó que le envió la cantidad de $500.00 a la apelante por el sistema de ATH Móvil, totalizando la cantidad a $1,532.00. Junto a su escrito, el señor González Badillo anejo evidencia de los pagos antes mencionados.

La señora Flores arguye que el foro de instancia incidió al no atender el asunto de los atrasos en la pensión alimentaria de A.D.G.F. Como es sabido, los tribunales apelativos no debemos modificar las decisiones relacionadas al manejo del caso emitidas por el foro de primera instancia, a menos que medie prejuicio, pasión, parcialidad o error manifiesto. Esta deferencia está cimentada en que dicho foro está en mejor posición para tomar las medidas que permitan el adecuado curso hacia su disposición final, de la forma más justa, rápida y económica posible y en consecución a la búsqueda de la verdad. De plano, concluimos que no abusó de su discreción el foro primario al no discutir los atrasos de pensiones en la *Resolución,* emitida el 2 de octubre de 2024 y notificada el 9 de octubre de 2024. Esto es, el asunto quedó resuelto a satisfacción del TPI con la consignación de los giros postales y el envío de dinero por el sistema de ATH Móvil. Nos parece inmeritorio intervenir en dicho asunto.

**IV.**

Por los fundamentos expuestos, confirmamos la *Resolución* apelada. En consecuencia, se confirma la determinación de custodia compartida.

---

[16] Apéndice de la Apelante, págs. 205-207.
[17] Apéndice de la Apelante, págs. 229-234.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones